64. Manufacturing Defendants provided inadequate warnings concerning hormone therapy as to blood clots. The Prempro warnings specifically minimized the risks of thromboembolic disorders, pulmonary embolisms and venous blood clots with language such as "the increased risk [of venous thromboembolism] was found only in current ERT [i.e., Premarin only] users", "postmenopausal estrogen use does not increase the risk of stroke" and simply "embolic cerebrovascular events and myocardial infarctions have been reported," without disclosing the true nature of the risk.

65. Manufacturing Defendants provided inadequate warnings concerning hormone therapy as to cardiac damage. For example, under Precautions, the Prempro label acknowledges: "The effects of estrogen replacement therapy on the risk of cardiovascular disease have not been adequately studied." Nevertheless, Wyeth Defendants consistently (and fraudulently) promoted the benefits of long term hormone therapy for cardiovascular disease. Such promotion was off-label, not supported or permitted by the Food & Drug Administration and was used by Wyeth to fraudulently induce better and higher sales of hormone therapy drugs.

66. Manufacturing Defendants represented that hormone therapy was safe for long-term use. It was not until January 6, 2003 that Wyeth abandoned this long-standing marketing strategy and cautioned physicians in a "Dear Doctor" letter that "estrogens and estrogens plus progestin should be prescribed for the shortest duration consistent with treatment goals. In early June 2003, Wyeth brought its new marketing campaign to the public with a new public relations campaign consisting of full-page advertisements placed in 180 newspapers nationwide. The advertisement, styled as "A Message from Wyeth," revealed Wyeth's abandonment of its long-term strategy of promoting long-term

usage of Premarin and Prempro for post-menopausal women for a variety of conditions, stating in part, that:

> Hormone therapy is not a lifelong commitment…. As a result of recent studies, we know that hormone therapy should not be used to prevent heart disease. These studies also report an increased risk of heart attack, stroke, breast cancer, blood clots, and dementia. Therefore, it is recommended that hormone therapy (estrogen, either alone or with progestin) ***should be taken for the shortest duration*** at the lowest effective dose.

67.     Manufacturing Defendants represented that hormone therapy was safe at the dosages recommended over the years even though Defendants knew for years that lower doses of these medications was just as effective and with less risk. It was again not until 2003, that Manufacturing Defendants, including Wyeth, cautioned physicians to use the lowest possible dose. Indeed, Wyeth created an entire new marketing strategy called "Go low with Prempro" and launched a new, lower dose combination treatment.

68.     Manufacturing Defendants represented that hormone therapy had benefits that were not supported by reliable science and failed to conduct the necessary pre-approval research and post-approval surveillance to establish the safety of long-term hormone therapy regimen. It was left to independent studies to uncover the serious risks that Manufacturing Defendants knew about (or in the exercise of reasonable care could have known about) these drugs. Manufacturing Defendants never told physicians and patients that no long-term testing had not been performed on these drugs, thereby fraudulently inducing physicians and patients alike to use these products with the false assumption that such drugs had been sufficiently tested.

69.     The manufacturers of generic equivalent MPA as well as brand-name Provera and Cycrin were aware that MPA would be prescribed as a part of combination hormone therapy. Indeed, Manufacturing Defendants marketed, promoted and sold

their MPA for such combination use.   Manufacturing Defendants knew, or in the exercise of reasonable care should have known, that the synthetic progestin was harmful, defective in design, would exaggerate or accelerate the harmful effects of estrogen and the combination therapy of estrogen with MPA would be unreasonably dangerous for use.   In fact, MPA, when used in combination hormone therapy has deleterious effects, including increasing the incidence of strokes, blood clots, heart attacks, breast cancers, and ovarian cancer.   Even though Manufacturing Defendants knew of these risks, they did not warn consumers of the serious adverse side effects of this form of combination hormone therapy in any of their respective labels or promotional materials.

70.     Further, Manufacturing Defendants in their manufacture of generic equivalent and brand-name MPA failed to conduct adequate pre-marketing clinical testing and research to determine the safety of MPA when used in combination with estrogenic compounds like Premarin.

71.     Manufacturing Defendants also failed to conduct adequate post-marketing surveillance to determine the safety of MPA when used in combination with estrogenic compounds.

72.     Nevertheless, Manufacturing Defendants never disclosed on their respective warning labels that such testing had not been performed, thereby fraudulently inducing physicians and patients alike to use the MPA drugs with the false assumption that such drugs had been sufficiently tested.

## IV. CAUSES OF ACTION

### COUNT I—NEGLIGENCE

73.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

74.    At all relevant times, Manufacturing Defendants had and continue to have a duty to exercise reasonable care to properly prepare, design, research, develop, manufacture, inspect, label, market, promote, and sell their hormone therapy drugs, which they introduced into the stream of commerce, including a duty to ensure their hormone therapy drugs do not cause users to suffer from unreasonably dangerous or untoward adverse side effects.

75.    At all times relevant, Manufacturing Defendants owed a duty to properly warn consumers of the risks, dangers, and adverse side effects of their hormone therapy drugs.

76.    Manufacturing Defendants breached this duty by failing to exercise ordinary care in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion, and selling of their hormone therapy drugs, which they introduced into the stream of commerce, because Manufacturing Defendants knew or should have known that their hormone therapy drugs created an unreasonable risk of harm for those who used the drugs.

77.    Manufacturing Defendants knew, or in the exercise of reasonable care, should have known that their hormone therapy drugs, were of such a nature that, if not properly prepared, designed, researched, developed, manufactured, inspected, labeled,

marketed, promoted, and sold, they were likely to cause injury to those who took their drugs.

78.     Manufacturing Defendants negligently provided inadequate and inaccurate warnings and information to the medical community and the public at large, including Plaintiff, by making false representations about the safety of their products. Manufacturing Defendants downplayed, understated, and disregarded their knowledge of the serious and permanent side effects associated with the use of their hormone therapy drugs despite available information demonstrating that their products were likely to cause serious and sometimes fatal side effects to users.

79.     Manufacturing Defendants were negligent in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion, and selling of their hormone therapy drugs, in that Manufacturing Defendants:

  a) Failed to use due care in the preparation of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

  b) Failed to use due care in the design of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

  c) Failed to conduct adequate pre-clinical testing and research to determine the safety of the hormone therapy drugs;

  d) Failed to conduct adequate post-marketing surveillance to determine the safety of the hormone therapy drugs;

  e) Failed to accompany the hormone therapy products with proper warnings regarding all possible adverse side effects associated with the use of such products and the comparative severity and duration of such adverse effects;

  f) Failed to use due care in the development of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

  g) Failed to use due care in the manufacture of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

h) Failed to use due care in the inspection of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

i) Failed to use due care in the labeling of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

j) Failed to use due care in the marketing of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

k) Failed to use due care in the promotion of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

l) Failed to use due care in the selling of the hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

m) Failed to provide adequate training and information to healthcare providers for the appropriate use of the hormone therapy drugs;

n) Failed to warn the Plaintiff and her healthcare providers, prior to actively encouraging and promoting the sale of the hormone therapy drugs, either directly or indirectly, orally or in writing, about the following:

- the need for comprehensive, regular medical monitoring to insure early discovery of potentially fatal strokes, heart attacks, venous thromboembolism, cardiovascular disease, breast cancer, ovarian cancer, and other adverse side effects; and

- the possibility of becoming disabled as a result of the use of the drugs;

- the adverse side effects associated with the use of the drug, including, but not limited to, strokes, heart attacks, venous thromboembolism, cardiovascular disease, breast cancer, and ovarian cancer; and,

o) Were otherwise careless and negligent.

80.    Despite the fact that Manufacturing Defendants knew or should have known that the hormone therapy drugs caused unreasonable and dangerous side effects which many users would be unable to remedy by any means, Manufacturing Defendants continued to promote and market such products to consumers, including Plaintiff, when safer and more effective methods of countering any health effects of menopause were available.

81. Manufacturing Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of its failure to exercise ordinary care as described herein.

82. Manufacturing Defendants knew or should have known that the hormone therapy products caused serious side effects. Nevertheless, Manufacturing Defendants continued to market such products by providing false and misleading information with regard to the safety and efficacy of the products.

83. As a result of the negligent conduct of Manufacturing Defendants, Plaintiff suffered the injuries and damages specified herein. All of the Manufacturing Defendants are liable to the Plaintiff jointly and severally for all general, special, and equitable relief to which the Plaintiff is entitled by law.

84. Manufacturing Defendants' actions, described above were performed willfully, intentionally, with malice and / or with reckless disregard for the rights of Plaintiff and the public. As such, Plaintiff is entitled to punitive damages against Defendants.

## COUNT II. STRICT PRODUCTS LIABILITY
### (Defective Product)

85. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

86. Plaintiff alleges that Manufacturing Defendants are liable under the theory of Strict Product Liability as set forth in the RESTATEMENT (SECOND) OF TORTS § 402A. Such Defendants were at all times engaged in the business of manufacturing, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling,

advertising, warning, and otherwise distributing hormone therapy drugs in interstate commerce, which they sold and distributed throughout the United States.

87.   Hormone Therapy drugs were expected to and did reach the Plaintiff without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned and otherwise distributed.

88.   Plaintiff used hormone therapy in a manner for which it was intended or in a reasonably foreseeable manner.

89.   Manufacturing Defendants' hormone therapy caused increased risks of personal injury and harm upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the Defendants' misrepresentations and inadequate facts disclosed to the Plaintiff.

90.   The hormone therapy drugs manufactured and/or supplied by Manufacturing Defendants were defective due to:

   (a)   Defective design or formulation in that when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation;

   (b)   Defective marketing in that Defendants made inappropriate, misleading, inaccurate and incomplete representations about this product in advertisements, news, commercials, and direct to consumer advertisements.   These deceptive marketing representations were made to the FDA, healthcare providers, pharmacists and the public. These deceptive marketing representations were made in order to induce sales and increase profits;

   (c)   Defective design or formulation, in that when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect, and more dangerous than other hormone replacement therapy (HRT) medications;

35

(d)    Inadequate warnings or instructions because the defendants knew or should have known that the product created a risk of dangerous side effects and other related conditions and diseases;

(e)    Inadequate pre-marketing testing which, if conducted properly, would have revealed the serious problems with this drug prior to the first sale; and/or

(f)    Inadequate post-marketing warning or instruction because, after the defendants knew or should have known of the risk of dangerous side effects and other related conditions and diseases, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

91.    Manufacturing Defendants, therefore, are strictly liable to the Plaintiff.

92.    As a direct and proximate result of these Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distribution of hormone therapy drugs in interstate commerce, Plaintiff has suffered injury and is at an increased risk of developing further injuries and has suffered compensatory and punitive damages in an amount to be proven at trial.

93.    Manufacturing Defendants' actions, described above were performed willfully, intentionally, with malice and / or with reckless disregard for the rights of Plaintiff and the public.  As such, Plaintiff is entitled to punitive damages against Manufacturing Defendants.

## COUNT III.   STRICT PRODUCTS LIABILITY
### (Defective Marketing and Inadequate Warnings)

94.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

36

95.    Manufacturing Defendants are manufacturers and/or suppliers of hormone therapy using retail or sample distribution. The hormone therapy manufactured and/or supplied by Manufacturing Defendants were not accompanied by proper warnings regarding dangerous side effects and posed potentially fatal health risks associated with the use of hormone therapy drugs in that the warnings given did not accurately reflect the symptoms, scope or severity of such injuries and health risks.

96.    Manufacturing Defendants failed to effectively warn consumers, pharmacists, physicians and healthcare providers that even under close medical monitoring, the potential for serious health complications existed, and there was no way to know which patients would suffer such complications.

97.    Manufacturing Defendants failed to perform adequate testing in that adequate testing would have shown that hormone therapy drugs pose significant risks of serious health events including and related conditions and diseases, with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

98.    Manufacturing Defendants knew, or should have known, that hormone therapy drugs were dangerously defective products which pose unacceptable risks unknown and unknowable by the consuming public of serious health events and related conditions and diseases. The hormone therapy drugs were defective due to inadequate warnings because after the Defendants knew or should have known of the risk of dangerous side effects and potentially fatal health risks, they failed to provide adequate warnings to consumers of the product and continued to aggressively promote and market the dangerously defective drugs.

99.    As a direct and proximate result of Manufacturing Defendants' conduct, Plaintiff has suffered injury and is at an increased risk of developing further injuries and has suffered compensatory and punitive damages in an amount to be proven at trial.

100.    Manufacturing Defendants' actions, described above were performed willfully, intentionally, with malice and / or with reckless disregard for the rights of Plaintiff and the public.  As such, Plaintiff is entitled to punitive damages against Manufacturing Defendants.

## COUNT IV.  NEGLIGENT MISREPRESENTATIONS

101.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

102.    At the time the Manufacturing Defendants manufactured, designed, marketed, sold, and distributed hormone therapy drugs for use by the Plaintiff, Manufacturing Defendants knew or should have known of the use for which hormone therapy drugs were intended and knew or should have known of the serious risks and dangers associated with such use of these products.

103.    Manufacturing Defendants owed a duty to prescribing physicians and ultimate end users, including Plaintiff to accurately and truthfully represent the risks and benefits of hormone therapy drugs.    Manufacturing Defendants breached that duty by misrepresenting the risks and benefits of hormone therapy drugs to the prescribing physicians and ultimate users, including the Plaintiff.

38

104.  As a direct and proximate result of Manufacturing Defendants' conduct, Plaintiff has suffered injury and is at an increased risk of developing further injuries and has suffered compensatory and punitive damages in an amount to be proven at trial.

105.  Manufacturing Defendants' actions, described above were performed willfully, intentionally, with malice and / or with reckless disregard for the rights of Plaintiff and the public.  As such, Plaintiff is entitled to punitive damages against Defendants.

## COUNT V    BREACH OF EXPRESS WARRANTY

106.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

107.  Manufacturing Defendants, through description, affirmation of fact, and promise expressly warranted to the FDA, prescribing physicians, and the general public, including the Plaintiff, that their hormone therapy products were both efficacious and safe for the intended use.  These warranties came in the form of:

(i) Publicly-made written and verbal assurances of the safety and efficacy of hormone therapy drugs,

(ii) Press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create and increase demand for hormone therapy drugs, which utterly failed to warn of the risks inherent to the ingestion of such products;

(iii) Verbal assurances made by Manufacturing Defendants regarding hormone therapy, and the downplaying of any risk associated with the drug;

(iv) False and misleading written information, supplied by Manufacturing Defendants, and published in the *Physicians Desk Reference* on an annual basis, upon which physicians were forced to rely in prescribing hormone therapy drugs during the period of Plaintiff's ingestion of hormone therapy drugs, including, but not limited to information relating the recommended dose, administration and duration of the use of the drugs;

(v) Promotional pamphlets and brochures published and distributed by Manufacturing Defendants and directed to consumers; and

(vi) Advertisements.

The documents referred to in this paragraph were created by and at the direction of Manufacturing Defendants.

108. At the time of these express warranties, Manufacturing Defendants had knowledge of the purpose for which hormone therapy was to be used and warranted it to be in all aspects safe, effective, and proper for such purpose.      Manufacturing Defendants' hormone therapy drugs do not conform to these express representations in that they are neither safe nor effective and use of such drugs produce serious adverse side effects.

109. As such, Manufacturing Defendants' products were neither in conformity to the promises, descriptions or affirmations of fact made about these drugs nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

110. Manufacturing Defendants breached their express warranties to Plaintiff by:

(i) manufacturing, marketing, packaging, labeling, and selling hormone therapy to the plaintiff and other users in such a way that misstated the risks of injury, without warning or disclosure thereof by package and label of such risks to the plaintiff and / or the plaintiff's prescribing physician, or without so modifying or excluding such express warranties;

(ii) manufacturing, marketing, packaging, labeling, and selling hormone therapy to plaintiff, which failed to counteract the negative health effects of menopause in a safe and permanent manner and without injury; and

(iii) manufacturing, marketing, packaging, labeling, and selling hormone therapy to plaintiff and other users, thereby causing the Plaintiff serious physical injury and pain and suffering.

111.  As a direct and proximate result of Manufacturing Defendants' conduct, Plaintiff has suffered injury and is at an increased risk of developing further injuries and has suffered compensatory and punitive damages in an amount to be proven at trial.

112.  Manufacturing Defendants' actions, described above were performed willfully, intentionally, with malice and / or with reckless disregard for the rights of Plaintiff and the public.  As such, Plaintiff is entitled to punitive damages against Manufacturing Defendants.

## COUNT VI    BREACH OF IMPLIED WARRANTY

113.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

114.  At the time Manufacturing Defendants marketed, sold, and distributed hormone therapy drug sfor use by the Plaintiff, these Defendants knew of the use for which these hormone therapy drugs was intended and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.  Contrary to such implied warranty, the hormone therapy drugs were not of merchantable quality or safe or fit for their intended use, because the products were and are unreasonably dangerous and unfit for the ordinary purposes for which they were used as described above.

115.  As the proximate, producing cause and legal result of the Defendants' breach of implied warranties, Plaintiff has been damaged as described herein in this complaint.

**COUNT VII.**    <u>**INTENTIONAL MISREPRESENTATIONS AND FRAUD**</u>

116. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

117. Manufacturing Defendants, having undertaken to prepare, design, research, develop, manufacture, inspect, label, market, promote, and sell their hormone therapy drugs owed a duty to provide accurate and complete information regarding these products.

118. Manufacturing Defendants' advertising program, by containing affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of their hormone therapy drugs were safe for human use, had no unacceptable side effects, and would not interfere with daily life.

119. Manufacturing Defendants intentionally encouraged prescribing physicians, consumers and Plaintiff to remain on hormone therapy for a longer duration than they know or should have known was safe and effective to remain on such products and at higher dosage levels than necessary.

120. On information and belief, Plaintiff avers that Manufacturing Defendants purposefully concealed, failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of hormone therapy. Manufacturing Defendants, through promotional practices as well as the publication of medical literature, deceived potential users and prescribers of the drugs by relaying only allegedly positive information, while concealing, misstating, and downplaying the known adverse and serious health effects. Manufacturing Defendants falsely and deceptively

42

kept relevant information from potential hormone therapy users and minimized prescriber concerns regarding the safety and efficacy of their drugs.

121.    Manufacturing Defendants did not properly study nor report accurately the results of its human animal and cell studies in terms of risks and benefits of its hormone therapy drugs.  Manufacturing Defendants also fraudulently and intentionally polluted the scientific literature related to hormone therapy in general and its hormone drugs in particular.  Manufacturing Defendants hired physicians and scientists to write inaccurate and misleading scientific articles for the purpose of creating confusion so as to pollute existing scientific and medical knowledge pertaining to menopausal hormone therapy and its particular products.  Manufacturing Defendants then used and relied on these inaccurate and fraudulently prepared scientific papers to defend and justify the marketing, promotions, and labeling of its hormone products.    At all times, Manufacturing Defendants knew that what it was publishing or having published was inaccurate and that this information would mislead the members of the medical and scientific communities who were studying or more importantly, prescribing the hormone drugs.

122.    The scientific and medical communities were misled as to the true nature of the risk and benefits of the Manufacturing Defendants' hormone therapy products in particular and in general as to the treatment needs and options for the symptoms of menopause.  It was not until the publication of the results from the independent study conducted by the WHI that the truth began to be generally available.  Even then the doctors in those communities had been so conditioned by the false science published and or funded for years by Manufacturing Defendants that it was difficult for many of

43

those doctors to accept the truth about the risks and lack of benefits associated with these hormone drugs.

123.    The misconceptions as to the true risks and benefits of Manufacturing Defendants' hormone drugs were pervasive throughout the medical and scientific communities due to the marketing methods employed by Manufacturing Defendants that included, but were not limited to the following:

- The publication of fraudulent scientific papers in scientific and medical literature;

- Providing false and misleading information to doctors during sales and detailing calls at the doctors offices or at medical or scientific conferences and meetings;

- Funding third-party organizations to disseminate false and misleading scientific and medical information through its publications and its members to physicians and patients;

- Funding continuing medical education to disseminate false and misleading information to doctors;

- Paying specialists in the hormone and menopause field to meet with prescribing doctors for the purpose of disseminating false and misleading information about the risks and benefits of the drugs;

- Providing false and misleading information to the FDA to support inaccurate risk and benefit information contained in the product labeling;

- Disseminating direct to consumers advertising to drive patients to their doctors' offices to ask for the drugs based on false and misleading information regarding the risks and benefits of the drugs

124.    In particular, in the materials disseminated by Manufacturing Defendants, they falsely and deceptively misrepresented or omitted a number of material facts regarding their hormone replacement drugs, including, but not limited to, the following:

- The presence and adequacy of the testing of the hormone therapy drugs, both pre-and post-marketing;

- The severity and frequency of adverse health effects caused by the hormone therapy drugs;

- The range of injuries caused by the hormone therapy drugs; and

- The lack of any reliable science to support representations about the benefits of hormone therapy.

125. As a result of these efforts it was accepted by the medical and scientific communities that these hormone drugs had a certain risk benefit profile that was shown to be completely false by independent studies including the WHI.

126. Manufacturing Defendants were in possession of evidence demonstrating that the hormone therapy products caused serious side effects. Nevertheless, Manufacturing Defendants continued to market and represent such products by providing false and misleading information with regard to its safety and efficacy to Plaintiff and Plaintiff's treating physicians.

127. Plaintiff and Plaintiff's treating physician(s) justifiably relied to their detriment on Manufacturing Defendants' intentional and fraudulent misrepresentations as set out above concerning their hormone therapy drugs which lead to damages to the Plaintiff as detailed herein.


### Count VII. <u>VIOLATIONS OF STATE CONSUMER FRAUD ACT</u>

128. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein and further alleges:

129. Plaintiff entered into consumer transactions with the Manufacturing Defendants by purchasing Defendants' hormone therapy medication. Plaintiff suffered injuries due to Defendants' intentional misrepresentations in violation of the state consumer laws of the home state of the Plaintiff. Plaintiff and her prescribing physician had a legitimate

expectation that Manufacturing Defendants would not provide inaccurate information concerning the benefits, risks, and use of hormone therapy.

130. Manufacturing Defendants conduct alleged herein, which took place during the course of and leading up to these transactions, constitutes unfair or deceptive trade practices - including the manufacture, marketing and sale of hormone therapy by an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment of material facts.

131. As a direct result of Defendants' violations, Plaintiff is aggrieved and suffered ascertainable losses by being denied material information regarding the safety, efficacy and risk of using HRT drugs so that they could make an informed decision as to whether to purchase HRT drugs, an alternative therapy or nothing at all.

132. Plaintiff has suffered injuries as detailed in the consumer law statutes of Plaintiff's home state and hereby sues for compensation for such injuries and for all other monetary relief available to Plaintiff under such statutes including reasonable attorney fees and expenses.

## COUNT VIII.    **GENERAL DAMAGES**

133. Plaintiff has been injured in many ways as a result of the Defendants' actions. Plaintiff is alleging and can prove serious health problems associated with the use of hormone therapy drugs.

134. Plaintiff suffers from breast cancer due to her use of hormone therapy drugs. Plaintiff suffered in the past, and it is anticipated will suffer in the future, medical testing, breast biopsies, invasive exploratory surgeries, removal of breast tissue, lumpectomy or mastectomy surgeries, disfigurement, reconstruction surgeries, chemotherapy,

radiation, chemical treatments, long-term cancer treatment using anti-estrogen drugs, continuing medical monitoring, physical and emotional pain, physical and emotional suffering, mental anguish, physical impairment, medical bills and expenses as well as loss of wages and wage earning capacity.

## COUNT IX.    **GROSS NEGLIGENCE**

135. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges the following:

136. The wrong done by the Defendants was aggravated by the kind of malice, fraud, reckless disregard for the rights of others, the public and the Plaintiff and conduct for which the law allows the imposition of exemplary damages, in that the Defendants' conduct:

- specifically intended to cause substantial injury to the Plaintiff; or

- when viewed objectively from Defendants' standpoint a the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or

- made a material representation that was false, knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation be acted on by the plaintiff. The Plaintiff relied on the representation and suffered injury as a result of this reliance.

137. Plaintiff, therefore, seeks exemplary damages in an amount within the jurisdictional limits of the court. Plaintiff also alleges that the acts and omissions of the named Manufacturing Defendants whether taken singularly or in combination with